UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| EthosEnergy Field Services, LLC, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> Axis Mechanical Group, Inc., § <br> Mark Jones, and Dan Henderson, § <br> Defendants. § | Civil Action H-21-3954 |

# Report and Recommendation

EthosEnergy Field Services, LLC, (EthosEnergy) sued its direct competitor, Axis Mechanical Group, Inc., (Axis), and former employees, Mark Jones and Dan Henderson, alleging violations of the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831–1839, the Texas Uniform Trade Secrets Act (TUTSA), Tex. Civ. Prac. & Rem. Code §§ 134A.001–134A.008, and the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(g). Pl.'s Orig. Compl., ECF No. 1. EthosEnergy also alleged Texas common law breach of fiduciary duties, aiding and abetting breach of fiduciary duties, unfair competition by misappropriation, tortious interference with contract or business relations, civil conspiracy, and breach of contract. *Id.*

Axis and Henderson separately filed motions to dismiss the original complaint. ECF Nos. 19, 23. The court granted EthosEnergy's unopposed motions for extension of time to respond to the motions. ECF Nos. 25, 27. By the deadline set, EthosEnergy filed an amended complaint. Am. Compl., ECF No. 29. The amended complaint asserted fewer claims against Henderson, more claims against Jones, and several of the common law claims in the alternative to the DTSA and TUTSA claims. *See* ECF No. 29.

Axis and Henderson filed motions to strike or, in the alternative, to dismiss the amended complaint, and Jones filed a motion to dismiss the amended complaint. ECF Nos. 34, 36–37. At a

hearing on March 31, 2022, the court denied as moot Axis's and Henderson's motions to dismiss the original complaint and denied their motions to strike the amended complaint. ECF No. 39. The parties have fully brief Defendants' three motions to dismiss the amended complaint. *See* ECF Nos. 34, 36–37, 43–46.

The court recommends that Henderson's motion to dismiss, ECF No. 36, be granted, that Axis's motion to dismiss, ECF No. 34, be granted in part, and that Jones's motion to dismiss, ECF No. 37, be granted in part.

1. *Allegations*

EthosEnergy is in the business of providing "rotating equipment repair and integrated solutions for the maintenance, repair, overhaul and upgrade of industrial rotating and reciprocating equipment." Am. Compl., ¶ 11. Axis provides the same type of services and is a direct competitor of EthosEnergy. *Id.* ¶ 25. Jones worked for EthosEnergy from January 1997 to April 2021 serving as vice president of operations and corporate president. *Id.* ¶¶ 12–13. Henderson worked for EthosEnergy from September 2011 to April 2021 serving as power generation field manager, director of operations for the Gulf Coast, and corporate vice president. *Id.* ¶¶ 14–15.

Jones and Henderson signed intellectual property (IP) agreements with EthosEnergy. Am. Compl. ¶ 18. The IP agreements imposed additional fiduciary responsibilities on Jones and Henderson, including duties not to publish or disclose EthosEnergy's proprietary information and to return all materials containing EthosEnergy's proprietary information. *Id.* "Jones and Henderson had access to and utilized EthosEnergy's valuable trade secrets, intellectual property, and confidential and proprietary business information as part of their job duties." *Id.* ¶ 22.

In March 2015, Axis began recruiting EthosEnergy's employees and customers. Am. Compl. ¶ 26. Jones accepted an offer of employment with Axis in January 2021 and left EthosEnergy in late

April 2021. *Id.* ¶ 28. Before submitting his resignation, Jones began recruiting other EthosEnergy employees, including Henderson, to work for Axis. *Id.* ¶ 29. Henderson accepted a position with Axis and left EthosEnergy about the same time as Jones. *Id.* at ¶¶ 29–30, 33.

In early March 2021, "Jones installed five . . . USB storage devices on his EthosEnergy issued laptop" and "accessed and/or saved" files containing EthosEnergy's confidential and proprietary information, including contracts with customers, labor rates, mark-up rates, and bids. Am. Compl. ¶¶ 55, 60–62.

During that same period, Jones also contacted Enterprise Fleet Management (Enterprise), which managed EthosEnergy's fleet of vehicles, and, contrary to EthosEnergy's instructions, directed Enterprise to sell several vehicles. Am. Compl. ¶¶ 39–40. An Enterprise representative questioned Jones's decision to sell those particular vehicles, which were newer models with low mileage, and Jones confirmed his directive to sell. *Id.* ¶ 41. Jones informed Enterprise that Axis's chief operating officer (COO) "may be interested in purchasing some of the newer units." *Id.* ¶ 39. Axis purchased four of EthosEnergy's fleet vehicles, three of which had been assigned to employees who later resigned to work for Axis. *Id.* ¶¶ 44–46. Due to high demand and low inventory, EthosEnergy was not able to replace those vehicles for six to eight months. *Id.* ¶ 47.

After joining Axis, Jones and Henderson traveled with Axis's COO and Axis's co-owner to northern California to solicit other employees from EthosEnergy. Am. Compl. ¶ 66. They falsely told EthosEnergy's employees that they should join Axis because EthosEnergy planned to close the northern California office. *Id.* A total of sixteen employees left EthosEnergy to work for Axis. *Id.* ¶ 67.

Jones, Henderson, and Axis also solicited EthosEnergy's customers by falsely telling them that EthosEnergy was planning to close offices and would be unable to provide the services that it had been. Am. Compl. ¶ 68. A total of five customers left EthosEnergy to become customers of Axis. *Id.* ¶ 69.

3

*2. Standard of Review*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "is not meant to resolve disputed facts or test the merits of a lawsuit." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

To survive a motion to dismiss, the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.*

Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Allen*, 907 F.3d at 177 (quoting *Twombly*, 550 U.S. at 555).

*3. Analysis*

EthosEnergy raised eleven causes of action in its amended complaint. All three Defendants moved to dismiss the amended

complaint in its entirety. The court examines each claim to determine whether EthosEnergy has stated any plausible claim to relief.

### A. DTSA (Claim 3) and TUTSA (Claim 4)

EthosEnergy brought trade secrets claims under federal and Texas statutes against Jones and Axis for misappropriation of "EthosEnergy's revenue, rates EthosEnergy charges(ed) to its customers, . . . its 'mark-up' rates that show EthosEnergy's profits on a particular contract[,]" including pricing information related to customers that Axis solicited. Am. Comp. ¶¶ 84–103.

A claim of trade secret misappropriation may be brought under DTSA and TUTSA. 18 U.S.C. § 1836(b)(1); Tex. Civ. Prac. & Rem. Code § 134A.004. Because both the federal and state statute are based on the Uniform Trade Secrets Act, the elements are similar but not identical. *See DBG Grp. Invs., LLC v. Puradigm, LLC*, Civil Action No. 3:21-CV-678-S, 2022 WL 313435, at *3 (N.D. Tex. Feb. 2, 2022). To state a claim under DTSA, a plaintiff must allege facts showing: (1) a trade secret; (2) misappropriation; and (3) that "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836 (b)(1). DTSA's definition of "misappropriation" includes acquisition of trade secrets with the knowledge that they were acquired by improper means or disclosure or use of trade secrets without consent. *See* 18 U.S.C. § 1839(5). The definition of "improper means" includes theft and "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A).

To state a claim under TUTSA, a plaintiff must allege facts showing: (1) a trade secret; (2) acquisition "through a breach of a confidential relationship or discovered by improper means; [(3)] the trade secret was used without authorization; and [(4)] the trade secret owner suffered damages as a result." *Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at *4 (Tex. App.—Dallas 2020, no pet.).

5

> "Trade secret" is defined by TUTSA to mean:
>
>> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if . . . the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret[] and . . . the information derives independent economic value . . . from not being generally known to[] and not being readily ascertainable through proper means by[] another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6). *see also* 18 U.S.C. § 1839(3) (using similar language to define "trade secret").

As discussed above in section 2, the federal pleading standard requires the court to assess plausibility of EthosEnergy's trade secret claims, accepting all well-pleaded facts as true and viewing the allegations in its favor. The amended complaint contains more than threadbare recitals of the elements of its DTSA and TUTSA claims.

EthosEnergy alleged the existence of trade secrets including financial data and customer information and identified policies and measures it used to protect the confidentiality of the alleged trade secrets. Am. Compl. ¶¶ 86–89, 97–100. EthosEnergy also alleged that Jones improperly downloaded the trade secrets, as well as intellectual property and other proprietary business information, and that Jones and Axis used that information to solicit EthosEnergy's customers and employees to EthosEnergy's detriment. *Id.* ¶¶ 90, 101. EthosEnergy alleged the trade secrets related to customers that Axis successfully solicited. *Id.* ¶ 92. Those customers engage in operations and utilize Axis's services in multiple states. *Id.* EthosEnergy alleged that it suffered damages because of Jones's and Axis's actions. *Id.* ¶ 103.

The factual allegations, even where thin on details, are nevertheless enough to meet the federal plausibility pleading standard. The amended complaint includes sufficient facts to raise a reasonable expectation that discovery will lead to evidence that supports the trade secret allegations. Because EthosEnergy's allegations satisfy the federal pleading standard, the DTSA and TUTSA claims should not be dismissed.

### B. Breach of Contract (Claim 11)

EthosEnergy brought a breach of contract claim against Jones for violating the IP agreement. Am. Compl. ¶¶ 152–55.

"In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* (quoting *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied)).

EthosEnergy alleged more than threadbare recitals of the elements of a breach of contract claim. EthosEnergy alleged that Jones signed the IP agreement and attached a copy of the agreement to its amended complaint. Am. Compl. ¶ 154; ECF No. 29-1. The IP agreement imposed on Jones duties not to publish or disclose proprietary information and to return all materials containing EthosEnergy's proprietary information. *See* Am. Compl. ¶ 18; ECF No. 29-1. EthosEnergy alleged that it "performed each obligation and condition required" under the IP agreement but that Jones took proprietary information from EthosEnergy's computers, disclosed that information to Axis, and refused to return EthosEnergy's proprietary information in violation of the IP agreement. Am. Compl.

7

¶¶ 153–54. EthosEnergy alleged that it suffered, among other damages, loss of customers, profits, and market share. *Id.* ¶ 155.

Because these allegations are sufficient to comply with Rule 8(a)(2) and to state a claim to relief that is facially plausible, the breach of contract claim should not be dismissed.

### C. Breach of Fiduciary Duties (Claim 1)

EthosEnergy brought a breach of fiduciary duties claim against Jones for selling, without the authority to do so, several of EthosEnergy's trucks to "one of his family members, [to] several individuals who left EthosEnergy and went to work for Axis Mechanical, and to Axis Mechanical itself" and for recruiting several of EthosEnergy's employees to resign in favor of employment with Axis. Am. Compl. ¶¶ 72–76.

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant exists; (2) a breach by the defendant of his fiduciary duty; and (3) an injury to the plaintiff or a benefit to the defendant from the breach." *In re Mandel*, 578 F. App'x 376, 388 (5th Cir. 2014) (citing *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet denied).

EthosEnergy alleged that, by virtue of Jones's role as a corporate officer, he owed EthosEnergy fiduciary "duties of loyalty and due care." Am. Compl. ¶ 73. EthosEnergy alleged that Jones, while still an EthosEnergy corporate officer, breached that duty by contacting Enterprise and directing the sale of several vehicles against EthosEnergy's interest. *Id.* ¶¶ 39–40. EthosEnergy alleged that Jones directed Enterprise to Axis, which purchased four of the vehicles. *Id.* ¶ 44. EthosEnergy also alleged that Jones began recruiting employees for Axis while still a corporate officer for EthosEnergy. Am. Compl. ¶ 29. These facts detail how Jones allegedly breached his fiduciary duty to EthosEnergy by selling the trucks and recruiting employees against EthosEnergy's interest.

8

Because these allegations are sufficient to comply with Rule 8(a)(2) and to state a claim to relief that is facially plausible, the breach of fiduciary duties claim should not be dismissed.

### D. Aiding and Abetting the Breach of Fiduciary Duties (Claim 6)

EthosEnergy brought a claim of aiding and abetting Jones's breach of fiduciary duties against Axis. Am. Compl. ¶¶ 117–23. The claim is based on allegations of Jones's sale of company trucks and recruitment of EthosEnergy's employees. *Id.*

A third party may become liable as a joint tortfeasor with a fiduciary under Texas law if it knowingly participates in the breach of a fiduciary duty. *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 215 (5th Cir. 2018). The elements of a claim of knowing participation in a breach of fiduciary duty are: "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship." *Id.* at 216 (quoting *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)).

EthosEnergy alleged that Jones was a corporate officer with fiduciary duties to EthosEnergy. Am. Compl. ¶ 13. Reading the complaint in the light most favorable to EthosEnergy, it is plausible that Axis, as a corporation itself, knew Jones's status as a corporate officer carried fiduciary duties. *See id.* ¶ 118-2. However, inferring that Axis was aware that it was participating in the breach of a fiduciary relationship based on the facts alleged goes a step too far.

EthosEnergy alleged that Axis "knew that Jones was violating his fiduciary duties to EthosEnergy when Jones orchestrated the sale of several trucks to soon to be Axis Mechanical employees as well as to Axis Mechanical itself." Am. Compl. ¶ 119. Allegations in other parts of the amended complaint suggest that a breach of fiduciary duty was not obvious from Jones's actions. For example, EthosEnergy alleged that Jones had the authority to direct the sale of certain trucks and that the sales were conducted by Enterprise, not by Jones himself. *Id.*

9

¶¶ 36–37, 39. No facts alleged show how Axis was participating with Jones in orchestrating the sale of trucks to Axis against EthosEnergy's wishes.

EthosEnergy alleged that Axis began recruiting EthosEnergy's employees in March 2015, years before Jones allegedly began recruiting employees for Axis. Am. Compl. ¶ 26. Although inferring that Axis knew about Jones's fiduciary duties is plausible, no facts show that Axis was participating, actively or passively, in Jones's recruitment efforts during his time as a corporate officer for EthosEnergy. For example, no facts alleged show that Jones was operating at Axis's direction or even communicating with Axis about the recruitment of EthosEnergy's employees. It is not enough to allege that Axis knew that Jones was violating his fiduciary duties. EthosEnergy needed also to allege facts showing that Axis knew it was participating in that breach. EthosEnergy's allegations fall short of that bar.

Because EthosEnergy failed to allege facts showing that Axis knew that it was participating in the breach of that fiduciary relationship, this claim should be dismissed.

### E. CFAA (Claim 2)

EthosEnergy brought a claim of violation of the CFAA against Jones for accessing EthosEnergy's computer system without authorization or by exceeding his authorization. The claim is based on allegations of Jones's stealing electronically stored information including trade secrets, intellectual property, and confidential and proprietary business information. Am. Compl. ¶¶ 77–83.

The CFAA provides a private cause of action when, as applied to this case, the conduct causes loss of at least $5,000 in a one-year period. 18 U.S.C. §§ 1030(c)(4)(A)(i)(I); 1030(g); *see also Van Buren v. United States*, ___ U.S. ___, 141 S.Ct. 1648, 1652 (2021). A civil plaintiff can state a CFAA claim by alleging that the defendant "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access" and thereby obtained "information

from any protected computer." *See* 18 U.S.C. § 1030(a)(2). "[An] individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 141 S.Ct. at 1662. Th

EthosEnergy alleged that its investigation revealed that Jones "accessed its protected computer(s) and/or computer system without authorization or exceeding [his] authorization[] and had obtained EthosEnergy's electronically stored information, including its valuable trade secrets, intellectual property, and confidential and proprietary business information." Am. Compl. ¶ 80. EthosEnergy alleged factual details about Jones's access, including the approximate date, the documents downloaded, and the electronic signatures of the USB storage devices used. *Id.* ¶¶ 55, 58. EthosEnergy alleged that it expended more than $75,000 conducting an investigation and damage assessment that required forensic examinations and the reassignment of executives, attorneys, and other employees from their normal duties. *Id.* ¶¶ 79, 81, 83.

Because these allegations are sufficient to comply with Rule 8(a)(2) and to state a claim to relief that is facially plausible, the CFAA claim should not be dismissed.

### F. Unfair Competition by Misappropriation (Claim 5)

EthosEnergy brought an unfair competition claim against Jones and Axis in the alternative to EthosEnergy's trade secret claims for misappropriation of "EthosEnergy's revenue, rates EthosEnergy charges(ed) to its customers, and its 'mark-up' rates that show EthosEnergy's profits on a particular contract." Am. Compl. ¶¶ 104–16.

TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). Federal district courts in Texas are not in agreement about how to apply TUTSA's preemption provision. *See, e.g., DHI Group, Inc. v. Kent*, 397 F.Supp.

11

...
...
...

3d 904, 922 (S.D. Tex. 2019) (comparing *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-cv-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018) (finding that TUTSA's preemption extends to "all claims based on the alleged improper taking of confidential business information") with *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F.Supp.3d 788, 827 (S.D. Tex. 2017) (allowing the plaintiff to allege misappropriation of information in the alternative under TUTSA as trade secrets and under common law as confidential)).

Despite the widespread disagreement on certain aspects of TUTSA preemption, "[m]ost district courts in Texas hold that if a plaintiff's tort claim is premised on the same factual allegations as its claim for trade secret misappropriation, the claim is preempted by TUTSA." *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, Civil Action No. H-19-2953, 2020 WL 6748049, at *13 (S.D. Tex. Nov. 17, 2020); *see also Embarcadero Techs., Inc.*, 2018 WL 315753, at *3 (stating that "allow[ing] multiple theories of relief for [the] same underlying harm would be to read the preemption provision too narrowly"); *Amid, Inc.*, 241 F.Supp.3d at 826 (stating that the focus of the preemption analysis is "on whether the facts relied on to support the unfair-competition claim differ from those supporting the TUTSA claim"); *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, CAUSE NO.: A-14-CA-00847-SS, 2016 WL 900577, at *8 (W.D. Tex. Mar. 2, 2016) (stating that a claim for conversion "based on the same facts as those underlying [a] claim for misappropriation of trade secrets" was wholly preempted).

Here, the court relies on the common thread among district courts. EthosEnergy's claim of unfair competition by misappropriation is based on the same facts underlying its DTSA and TUTSA claim. To support the claim of unfair competition, EthosEnergy alleged that Jones, on behalf of Axis, accessed and downloaded confidential information from EthosEnergy's computers. Am. Compl. ¶ 108. The computer files included "EthosEnergy's revenue, rates EthosEnergy charges(ed) to its customers, and its 'mark-up' rates that show EthosEnergy's profits on a particular

12

contract." *Id*. This language is identical to EthosEnergy's description of its trade secrets in its misappropriation of trade secret claims. *Compare id.* ¶ 108 *with id.* ¶¶ 87, 98. Moreover, EthosEnergy twice included, in its statement of this claim, the words "valuable trade secrets" as the information misappropriated. *Id.* ¶¶ 112–13.

Because the unfair competition by misappropriation as alleged is based on the misappropriation of trade secrets, it is preempted by TUTSA and should be dismissed.

### G. Tortious Interference (Claims 7 and 8)

EthosEnergy brought two tortious interference with contract or business relations claims: (1) one against all three defendants for "successfully solicit[ing] several of EthosEnergy's customers based on false statements" about EthosEnergy's ability to continue to provide services to its customers (Claim 7); and (2) one against Jones and Axis, in the alternative to the trade secret causes of action, for accessing, transferring, and using "EthosEnergy's revenue, rates EthosEnergy charges(ed) to its customers, and its 'mark-up' rates that show EthosEnergy's profits on a particular contract" (Claim 8). Am. Compl. ¶¶ 124–37.

"Texas law protects prospective contracts and business relations from tortious interference." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The elements of a claim of tortious interference with a contract are: (1) the existence of a contract; (2) a willful and intentional act of interference; (3) that proximately caused plaintiff actual loss or damages. *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 305 (5th Cir. 2021) (quoting *Fridl v. Cook*, 908 S.W.2d 507, 513 (Tex. App.—El Paso 1995, writ dism'd w.o.j.)).

The elements of a claim for tortious interference with prospective business relations are: (1) "a reasonable probability that the plaintiff would have entered into a business relationship with a third party;" (2) "the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was

certain or substantially certain to occur as a result of the conduct;" (3) "the defendant's conduct was independently tortious or unlawful;" (4) "the interference proximately caused the plaintiff injury;" and (5) "the plaintiff suffered actual damage or loss as a result." *Coinmach Corp.*, 417 S.W.3d at 923.

Claim 7 is based on the successful recruitment of EthosEnergy's customers based on misrepresentations that EthosEnergy would be closing several offices and would no longer be able to provide the same services. Am. Compl. ¶ 126. However, EthosEnergy failed to allege facts identifying any contract with which Defendants interfered as required for tortious interference with a contract and failed to allege facts showing a reasonable probability that it would have entered a business relationship with any potential customer as required for tortious interference with prospective business relations. EthosEnergy's allegations that Jones, Henderson, and Axis solicited EthosEnergy's customers "in California and elsewhere" fail to provide notice to Defendants of the customers, contracts, or prospective business relations with which they allegedly interfered. Thus, EthosEnergy failed to satisfy the first element of its tortious interference claim.

Because EthosEnergy failed to satisfy Rule 8(a)(2) or to state a plausible claim for relief, the tortious interference Claim 7 should be dismissed. Because Claim 8 is based on the misappropriation of trade secrets, it is preempted by TUTSA for the reasons discussed above in section 3.F. and should be dismissed.

### H. Civil Conspiracy (Claims 9 and 10)

EthosEnergy brought two civil conspiracy claims: (1) one against all three defendants for "engag[ing] in a civil conspiracy to tortiously interfere with EthosEnergy's contracts and/or business relations" by using false statements and "to steal and misappropriate EthosEnergy's valuable trade secrets, intellectual property, and confidential and proprietary business information" (Claim 9); and (2) one against Jones and Axis, in the alternative to the trade secret

causes of action, for "engag[ing] in a civil conspiracy to tortiously interfere with EthosEnergy's contracts and/or business relations, to steal and misappropriate EthosEnergy's valuable confidential information . . . and to engage in unfair competition by misappropriation" (Claim 10). Am. Compl. ¶¶ 138–50.

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp. v. Electro Circs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Civil conspiracy is a derivative tort that "depends on some underlying tort or other illegal act. *Id.* at 140–41.

To the extent that these claims are premised on trade secrets, they are preempted as discussed in section 3.F. The civil conspiracy claims depend on either the unfair competition by misappropriation claim or the tortious interference claim as the underlying tort. Because the unfair competition and the tortious interference claims should be dismissed, the civil conspiracy claims should also be dismissed.

*4. Conclusion*

For the reasons explained above, the court recommends that Henderson's motion to dismiss, ECF No. 36, be granted, that Axis's motion to dismiss, ECF No. 34, be granted in part, and that Jones's motion to dismiss, ECF No. 37, be granted in part. The court recommends that the claims of aiding and abetting breach of fiduciary duties, unfair competition, tortious interference, and civil conspiracy be dismissed. Because the court recommends that both claims alleged against Henderson be dismissed, the court recommends that he be dismissed as a party.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for

plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on June 10, 2022.

_____
Peter Bray
United States Magistrate Judge